# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| D. BLAINE LEEDS, DDS and<br>SMILEDIRECTCLUB, LLC, | )<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>) |
| BOARD OF DENTAL EXAMINERS OF<br>ALABAMA; ADOLPHUS M. JACKSON,<br>DMD; T. GERALD WALKER, DMD;<br>DOUGLAS BECKHAM, DMD; STEPHEN<br>R. STRICKLIN, DMD; MARK R.<br>MCILWAIN, DMD, MD; KEVIN M.<br>SIMS, DMD, MS; SHERRY S.<br>CAMPBELL, RDH, CDHC; individually<br>and in their official capacities as Members<br>of the Board of Dental Examiners of<br>Alabama, | )<br>)<br>) Civil Action No. 2:18-cv-01679-RDP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## PLAINTIFFS' RESPONSE TO AMICUS CURIAE BRIEF
## FILED BY AMERICAN ASSOCIATION OF ORTHODONTISTS

Plaintiffs Dr. D. Blaine Leeds, DDS ("Dr. Leeds") and SmileDirectClub, LLC ("SmileDirect") submit this response to the Brief of *Amicus Curiae* American Association of Orthodontists ("AAO") in Support of Defendants' Motion to Dismiss (Doc. 47-1). The AAO, which represents the interests of competitors of Dr. Leeds and SmileDirect, has submitted a brief that largely argues matters that are not before the Court. Nothing in the brief provides any basis for the Court to grant Defendants' motion to dismiss.

### INTRODUCTION

The AAO's brief is the jurisprudential equivalent of a drive-by shooting. Acting on an urgent desire to stave off innovative competition that threatens the economic interests of its

1

members, the AAO bursts onto the scene with guns firing in all directions. Without regard for the issues that are actually in play in the lawsuit, without regard for the issues that are actually in play in the motion to dismiss, and without regard for the basic rules of what can be considered on a motion to dismiss, the AAO launches a fusillade of meritless arguments, hoping that one will hit the mark. But none does. Plaintiffs' claims are—and should remain—alive and well.

Make no mistake. Notwithstanding the high-minded objectives that the AAO claims to be pursuing (Doc. 47-1, p. 4), its participation in this case is driven by its monopolistic objective to protect its members from the serious competition that the Plaintiffs present with their lower cost, more convenient method to correct mild to moderate malocclusion of the teeth. Consumers across the United States have embraced the idea of spending thousands of dollars less to fix a crooked smile than what orthodontists have painfully extracted for generations. Most orthodontists, not surprisingly, aren't so happy to lose the revenue and control over pricing. The AAO's belated arrival on the scene in this case is part of its nationwide effort[1] to impede the ability of SmileDirect and the dentists with whom it works to compete with the AAO's members and to offer a low-cost alternative to consumers.

## ARGUMENT

**I.      Many of the AAO's legal arguments and all of its "evidence" can be disregarded.**

By larding up its brief with arguments and evidence that cannot be considered by the Court, this so-called friend has done the Court no favors.

---

[1]     The AAO filed complaints with at least 36 state dental boards as part of its anticompetitive campaign to impede SmileDirect. *See* K. Stetzel, "Start-Ups Make Cheap Alternative to Braces, Dental Trade Groups Cry For Regulation," reason.com (May 2, 2018), https://reason.com/blog/2018/05/02/braces-dental-trade-group-protectionism. The AAO fails to mention that the complaint that it filed against SmileDirect in Alabama was rejected even by the Defendant Board.

It is settled law that an amicus cannot "create, extend, or enlarge" the issues in the case in which the amicus appears. *See U.S. v. State of Michigan*, 940 F.2d 143, 165 (6th Cir. 1991) (citing *Phoenix v. Phoenix Civic Auditorium & Convention Center Ass'n*, 99 Ariz. 270 (1965)); *see also Evans v. Ga. Regional Hospital*, 850 F.3d 1248, 1257 (11th Cir. 2017) ("[W]ithout exceptional circumstances, *amici curiae* may not expand the scope of an appeal to implicate issues not presented by the parties to the district court." (internal quotations omitted)).[2] "[A]n *amicus curiae* is not a party and has no control over the litigation . . . with the amicus merely responding to the issues presented by the parties." *U.S. v. Bd. of Cnty. Comm'rs of Cnty. of Otero*, 184 F. Supp. 3d 1097, 1117 (D. N.M. 2015) (internal citations omitted). Simply put, "[a]n amicus may not raise issues not advanced by the parties themselves." *U.S. v. Mullet*, 868 F. Supp. 2d 618, 624 (N.D. Ohio 2012); *accord, e.g., North Dakota v. Heydinger*, 15 F. Supp. 3d 891, 906 (D. Minn. 2014); *Citizens Against Casino Gambling in Erie County v. Stevens*, 945 F. Supp. 2d 391, 406 (W.D.N.Y. 2013); *WildEarth Guardians v. National Park Service*, 804 F. Supp. 2d 1150, 1153 n. 2 (D. Colo. 2011); *Tafas v. Dudas*, 511 F. Supp. 2d 652, 660–661 (E.D. Va. 2007).

**A. Most of the arguments asserted by the AAO are irrelevant.**

Although the AAO purports to submit its brief in support of Defendants' motion to dismiss, the AAO has ignored what legal issues are at issue in this lawsuit in general and in the motion to dismiss in particular. Instead, without regard to what is actually before the Court, the AAO appears to submit every argument it can concoct concerning SmileDirect's activities in Alabama.

---

[2] The exceptional circumstances that would permit a court to consider an issue raised only by an amicus are limited to circumstances where "(1) a party attempts to raise the issue by reference to the *amicus* brief; or (2) the issue "involves a jurisdictional question or touches upon an issue of federalism or comity that could be considered sua sponte.'" Tyler v. City of Manhattan, 118 F.3d 1400, 1404 (10th Cir. 1997) (quoting *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993)).

However, the AAO not only lacks any ability to expand the issues before the Court, it also lacks the authority or objectivity to assume the role of public avenger in enforcing its self-interested rewrite of Alabama law.

Most fundamentally, the AAO ignores the fact that this lawsuit arose out of a specific cease-and-desist letter and a follow-up email that the Board sent to SmileDirect.  (Doc. 29, ¶¶ 59-62).  The sole basis in those communications for the Board's assertion that SmileDirect must suspend its activities at the Alabama SmileShop was that SmileDirect personnel at that facility could not lawfully take photos of a customer's teeth and gums using an iTero without a dentist being present in the building.  (*Id.*).  Because that was the only activity that the Board asserted to be illegal, that is the only activity that Plaintiffs put at issue in this lawsuit.  (*See* Doc. 29).  Thus, although the AAO attacks several other activities allegedly performed by SmileDirect or Dr. Leeds, those arguments are irrelevant in this lawsuit, and the AAO's arguments concerning them must be disregarded.

In an effort to rescue its arguments from irrelevance, the AAO erroneously contends that all of the activities of SmileDirect and Dr. Leeds must be considered, but the single case on which the AAO bases that sweeping proposition is not on point.  In *White Smile USA, Inc. v. Bd. of Dental Examiners of Alabama*, 36 So. 3d 9 (Ala. 2009), the Alabama Supreme Court considered whether the sale of a teeth whitening product with in-store application constituted the practice of dentistry.  Anticipating that the Board would view these activities as illegal under Alabama law, the owner of the store in question filed a declaratory judgment action.  *Id.* at 10.  In arguing its case, the store owner attempted to break out each step of the process involved in delivering the product and associated services to the customer and, in turn, contended that none of those steps individually amounted to the practice of dentistry under Alabama law.  *Id.* at 13–14.  But, critically,

4

the Board took a contrary view, expressly contending that the activities undertaken at the store, as a whole, constituted the practice of dentistry. *Id.* at 12-13.  Because the Alabama Supreme Court understood that "[t]he issue presented . . . is whether the sale of the [teeth-whitening product] with in-store application, *as performed in [the particular store]*, is the practice of dentistry within the meaning of § 34-9-6," the court concluded that it would consider the teeth-whitening process undertaken at the store as a whole.  *Id.* at 14 (emphasis original).  In other words, because the dispute between the parties involved the entirety of the process, the Alabama Supreme Court held that the entirety of the process needed to be considered.

Here, by contrast, the entirety of the activities performed by SmileDirect and Dr. Leeds are not at issue.  The Board based its enforcement communications directed to SmileDirect solely on the taking of photos with the iTero at the SmileShop.  Consistent with that, the parties have focused this lawsuit on a single rule concerning the supervision requirements for digital imaging (Ala. Admin. Code § 270-x-3-.10), whether the rule was adopted in conformity with applicable law, whether the rule applies to SmileDirect's activities, and, if so, whether SmileDirect complied with it.  (Doc. 29, ¶ 59–62; Doc. 33; Doc. 41).  In light of that, the case-specific holding in *White Smile* is inapposite and provides no justification for the AAO's backdoor effort to inject new issues into this litigation.

**B. None of the "evidence" submitted by the AAO can be considered.**

In addition to raising issues that are neither at issue in the motion to dismiss nor in the lawsuit, the AAO is riddled with arguments where the AAO improperly cites to and relies upon extrinsic evidence that cannot be considered by the Court in deciding the motion to dismiss.  Most of the arguments introduced by the AAO rely on evidence that must be disregarded (as this Court has already observed).  (Doc. 52).

It is settled law in this Circuit that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and *the court limits its consideration to the pleadings and exhibits attached thereto*." *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (emphasis added) (internal quotation marks omitted). The AAO does not acknowledge this controlling law, let alone offer any explanation as to why any of the 195 pages constituting the eight exhibits attached to its brief are properly before the Court. Accordingly, all of that evidence must be disregarded, and all of the AAO's discussion and arguments that rely on that evidence should also be disregarded. This includes the portions of the brief contained at pages 5-7, 8-10, and 13-15 as well as footnotes 4-6, 8-9, 11-12, and 14.[3]

## II. The AAO ignores the reasons why Defendants' actions are unauthorized under Alabama law.

To the extent that the AAO includes any legal arguments in its brief that are even arguably relevant, the arguments are made at such a high level of generality that they make no meaningful contribution to the specific, granular issues that have to be determined by the Court.

### A. The AAO does not address the statutory provisions applicable to this case.

In its brief, the AAO makes an argument about the statute concerning the practice of dentistry while largely ignoring the particular provisions of the Alabama Code that determine whether the taking of photos with the iTero at the SmileShop constitutes the practice of dentistry. The AAO argues at length about a general provision of the Dental Practice Act indicating that any person who performs a dental service is engaged in the practice of dentistry, but the AAO says very little about the specific provisions of the Act that govern the taking of digital images. It is an established proposition of law, however, that the specific statutory provision that applies to a

---

[3] The Court should also disregard the numerous *ipse dixit* factual assertions that the AAO makes in its brief without any citation to the Amended Complaint or anything else.

certain activity controls over a more general provision. *See Jackson v. Geneva Cty. Bd. of Educ.*, 160 So. 3d 1221, 1226 (Ala. Civ. App. 2013) (citing *Crawford v. Springle,* 631 So.2d 880, 882 (Ala. 1993)). Indeed, in the context of the Dental Practice Act, rather than apply general provisions of the Act, a court should look to whether the legislature has addressed the specific point at issue in the statutory language. *See Westphal v. Northcutt*, 187 So. 3d 684, 692 (Ala. 2015).

As Dr. Leeds and SmileDirect explained in their brief in opposition to the motion to dismiss (in the context of explaining why the first *Midcal* requirement has not been satisfied), there are three specific provisions of the Act that fatally undermine the Board's promulgation and application of a rule requiring a dentist to be somewhere in the building when photos are taken with an iTero (Doc. 41, pp. 8–14), yet the AAO has no credible answer to any of them.

### 1. Supervision v. direct supervision

*First*, it is beyond dispute that the legislature in the Dental Practice Act drew a distinction between "supervision" and "direct supervision" of various activities by a dentist. *Compare* Ala Code § 34-9-7(a)(5) *with* § 34-9-7(a)(6). And, furthermore, the legislature expressly stated that the Dental Practice Act does not apply to "[t]he use of roentgen machines or other means for making . . . digital images . . . under the supervision of a licensed dentist or physician." § 34-9-7(a)(5). This necessarily means that a person or entity is not engaged in the practice of dentistry under Alabama law if it takes digital images under the supervision of a dentist, and the Amended Complaint establishes that the photos taken at the SmileShop are done under the supervision of an Alabama-licensed dentist. (Doc. 29, ¶ 34).

In Plaintiffs' brief in response to the motion to dismiss, Plaintiffs cited the settled canon of statutory construction that the legislature must be presumed to have intended different meanings for different terms used in the same statute. (Doc. 41, p. 12 n. 4). And, in light of that, the Board

7

clearly erred in interpreting "supervision" to mean the same thing as "direct supervision" when it promulgated the rule at issue in this case related to digital images. (Doc. 41, pp. 11-12).

How does the AAO answer that point? It simply says, without any citation to any legal authority, that Plaintiffs "are not correct." (Doc. 47-1, p. 2 n. 2). That sort of "take-my-word-for-it" approach to legal argument won't fly in the face of controlling law.[4]

### 2. Digital images

*Second,* the AAO also offers no effective response to the fact that the photos taken with an iTero at the SmileShop are not "digital images" and do not involve "digital imaging" under the Dental Practice Act. As Plaintiffs explained in their earlier brief, under another controlling canon of statutory construction, the words in a statute must be interpreted in light of the words around them. (Doc. 41, pp. 12-13). Applying that canon, one can only conclude that "digital images" must refer to imaging conducted via forms of radiation. (Doc. 41, p. 13).

How does the AAO answer that? Again, the AAO does not even mention the controlling canon. Instead, relying on impermissible extrinsic evidence (not the statutory language), the AAO again makes a "take-my-word-for-it" and self-serving argument, simply stating in conclusory fashion that the photos taken at the SmileShop are "digital images." (Doc. 47-1, p. 14 n. 11).

### 3. Teledentistry in the public interest

*Third*, the AAO completely ignores the Alabama legislature's express finding that the technological advances that are enabling the practice of dentistry across state lines (*i.e.*, teledentistry) are "in the public interest." Ala. Code § 34-9-2(b). In fact, as one would expect

---

[4] The AAO also points to a portion of § 34-9-7(a)(5) providing that digital imaging under the supervision of a dentist or physician is not acceptable if it is the subject of advertising. This argument by the AAO is a red herring for multiple reasons. First, no argument about that provision is at issue in the motion to dismiss or in the lawsuit. Second, the argument does not get around the fact that "supervision" and "direct supervision" are used as distinct terms in the Dental Practice Act. Furthermore, if the Board were ever to attempt to enforce that provision, it would almost certainly be subject to constitutional attack in that it involves a grave intrusion on First Amendment rights.

from an organization seeking to protect the economic interests of orthodontists who depend on traditional (and more expensive) in-person office visits, the AAO attacks SmileDirect precisely because its business model does not have an "orthodontist, dentist, or other doctor perform an *in-person* examination of the patient's mouth." (Doc. 47-1, p. 6 (emphasis in original)). That, however, is what teledentistry is all about. While the AAO may not like the Alabama legislature's determination about the merits of teledentistry, the AAO cannot play "hide the ball" and just ignore that key legislative determination.

### B. The fact that the Alabama legislature recognized that public health, safety, and welfare is a consideration in regulating dentistry does not mean that the Board based its anticompetitive actions on those concerns.

The AAO raises a red herring when it focuses on the Alabama legislature's general statement that "the practice of dentistry and the practice of dental hygiene affect the public health, safety, and welfare and should be subject to regulation." The AAO fails to mention that the legislature also set up a specific process to ensure that purported concerns about public health, safety, and welfare are not used as a device to mask anticompetitive activity by the members of the Dental Board. Specifically, the legislature provided that rules adopted by the Board "may define and regulate the practice of dentistry . . . in a manner that prioritizes patient health, safety, and welfare, even if the rule has elements that appear anti-competitive or have an anti-competitive effect *when the effect on public health, safety, and welfare is clearly demonstrated and documented by the board*." Ala. Code § 34-9-43.2(b) (emphasis added). In adopting the rule at issue in this case, the Board did not clearly demonstrate and document any effect on public health, safety, and welfare that would warrant the anticompetitive results of the rule that requires a dentist to be in the building when photos are taken with an iTero. (Doc. 29, ¶ 57).[5]

---

[5] Not only did the Board fail to demonstrate and document any effect on public health, safety, and welfare when it promulgated the rule at issue, but it also did not avail itself of the opportunity offered by this Court at the time

Having no answer to this fatal deficiency in the Board's promulgation of the applicable rule, the AAO simply ignores it.[6] Indeed, the AAO makes almost no mention in its brief of the antitrust issues related to market actors setting rules to exclude a low-cost competitor.[7] As much as the AAO would like to pretend that the suppression of competition is not at the heart of his lawsuit, it is. The Defendants' failure to adhere to the procedures enacted by the legislature to guard against the use of the Board's authority to engage in illegal anticompetitive conduct is a damning fact whether the AAO mentions it or not.

### C. The fact that the Board is authorized to issue rules does not give it authority to ignore controlling law in doing so.

Finally, contrary to the AAO's suggestion, the Board's statutory authority to promulgate rules and regulations to implement the Dental Practice Act and to enforce the statutes and rules related to the practice of dentistry does not give the Defendants a "get-out-of-jail free" card that permits them to commit antitrust and constitutional violations in an effort to restrict competition. Indeed, under settled Alabama law, "[i]t is axiomatic that administrative rules and regulations must be consistent with the constitutional or statutory authority by which their promulgation is authorized," and thus "[a] regulation . . . which operates to create a rule out of harmony with the statute, is a mere nullity." *Ex parte City of Florence*, 417 So. 2d 191, 193–194 (Ala. 1982); *accord Ex parte Jones Mfg. Co., Inc.*, 589 So. 2d 208, 210 (Ala. 1991) ("An administrative regulation

---

of entry of the Temporary Restraining Order to present any real-world evidence of any public health or safety impacts from taking photos with the iTero.

[6] In its zeal to restrict the ability of SmileDirect and Dr. Leeds to compete with its members, the AAO grossly misstates one of the pieces of evidence that it improperly attaches to its motion. It is already established for purposes of this motion that there are no effects on public health and safety from use of the iTero to take photos. (Doc. 29, ¶¶ 57, 70, 87, 92, 99). Although the AAO suggests in its brief that it has evidence that there has been an adverse incident at the Alabama SmileShop associated with the taking of photos with the iTero (Doc. 47-1, p. 14 n. 12), the exhibit cited by the AAO does not remotely support that assertion (Doc. 47-1, Ex. I).

[7] The AAO's effort to dodge the anticompetitive results of protectionist behavior by state dental boards is nothing new. The AAO appeared as an amicus in support of the North Carolina Dental Board's losing effort in the U.S. Supreme Court. *Brief of the American Dental Association, American Medical Association, et al. as Amici Curiae*, 2014 WL 2506627 (U.S. May 30, 2014).

must be consistent with the statutes under which its promulgation is authorized."). As Plaintiffs explained in their main brief (Doc. 41), the rule at issue in this case cannot be squared with the controlling statutes, so the rule cannot be invoked to excuse the Defendants' misconduct.

## CONCLUSION

For the foregoing reasons, the arguments presented by the AAO provide no basis to grant the motion to dismiss. That motion should be denied based upon the arguments presented in Plaintiffs' main brief and this brief.

Respectfully submitted this 24th day of January, 2019.

*s/ Matthew H. Lembke*
Matthew H. Lembke

*Counsel for Plaintiffs*

Matthew H. Lembke
David G. Hymer
Michael R. Pennington
J. Bradley Robertson
Hillary C. Campbell
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Phone: (205) 521-8000
Facsimile: (205) 521-8800
mlembke@bradley.com
dhymer@bradley.com
mpennington@bradley.com
brobertson@bradley.com
hcampbell@bradley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2019, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*s/ Matthew H. Lembke*
One of the Attorneys for Plaintiffs
